**Michael REED, Appellant**

**v.**

**The STATE of Texas.**

**No. PD–366–07.**

Court of Criminal Appeals of Texas.

Oct. 29, 2008.

Clint F. Sare, College Station, for Appellant.

Douglas Howell, III, Assistant District Attorney, Bryan, for State.

## OPINION

JOHNSON, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, and COCHRAN, JJ., joined.

After a trial by jury, appellant was convicted of one count of deadly conduct and one count of misdemeanor assault. Only the deadly-conduct conviction is before us on the state's petition for discretionary review. For that offense, the trial court imposed a sentence of four years' incarceration, probated for eight years, and a $2,000 fine. The court of appeals reversed the trial court's judgment of conviction on the deadly-conduct offense and rendered a judgment of acquittal. *Reed v. State*, 214 S.W.3d 626 (Tex.App.-Waco 2006). We granted the sole issue in the state's petition for discretionary review. We affirm the judgment of the court of appeals.

## FACTS

Appellant and his twin brother, Christopher, had a dispute about Christopher wanting to install a deadbolt lock on a bedroom door in the home they shared. The deadbolt-lock dispute continued when appellant returned home on a break from his work as a security guard. The dispute escalated, and the brothers wrestled, with a baton and pool cue being used. At some point, appellant drew his work firearm. During the struggle, appellant fired the gun into the hallway wall. *Reed, supra*, 214 S.W.3d at 627.

## THE APPEAL

On direct appeal, appellant claimed that the evidence was legally insufficient to convict him of deadly conduct as alleged in the indictment. The court of appeals held that a rational trier of fact could not have found the essential elements of deadly conduct beyond a reasonable doubt. *Id.* at 628. It noted that, in the context of appellant's charging instrument, "a person commits the offense of deadly conduct by knowingly discharging a firearm at or in the direction of a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied." *Id.* Pointing out that the penal code does not define the phrase "at or in the direction of," it also held that " 'discharging a firearm at or in the direction of a habitation' assumes that the actor is outside the habitation." *Id.* Because the evidence showed that appellant was inside his home when he discharged the firearm, the court of appeals reasoned that the evidence was insufficient to sustain the deadly-conduct conviction and rendered a judgment of acquittal on that offense. *Id.* at 628–29.

The state's sole ground for review asks, "Did the Court of Appeals err in holding that the evidence was legally insufficient to prove that Appellant discharged a firearm 'at or in the direction of a habitation?' " The state asserts that the court of appeals's "interpretation of the phrase 'at or in the direction of' places far too narrow [a] definition upon the phrase to be used in connection with Tex. Penal Code § 22.05(b)(2)." (State's Brief, p. 3)

The deadly-conduct count of appellant's indictment alleged that he knowingly discharged a firearm at or in the direction of a habitation and was then and there reckless as to whether the habitation was occupied. The jury charge likewise required the jury to find beyond a reasonable doubt that appellant had done those things before it could find him guilty of deadly conduct as alleged in the indictment.

Appellant argues that the court of appeals correctly held that the phrase "at or in the direction of" a habitation in § 22.05(b) requires the actor to be outside the habitation to commit an offense under that provision; that result is compelled by

the plain language of the statute and the rules of statutory construction, which require courts to give effect to the intent of the legislature by reading, in context, the words chosen by the legislature. He also argues that the court of appeals properly construed the words in the context of § 22.05(b), while the state focuses upon the words in isolation.

The state cites language from the Tyler Court of Appeals, discussing one of the parties' briefs in an unrelated case; "It is less than definite than 'in' or 'on'; 'at' the house may be 'in' or 'near' the house." *Camp v. State*, 925 S.W.2d 26, 29 n. 1 (Tex.App.-Tyler 1995, pet. ref'd). But the quoted language was *obiter dictum* because *Camp* involved a defendant accused of aggravated assault by pointing a firearm "toward" a peace officer rather than an allegation of discharging a firearm "at or in the direction of" a habitation.

The state argues that the "at or in the direction of" plain language of § 22.05(b)(2) includes discharging a firearm inside a house. The state asserts that "the statute's plain language shows that it seeks to proscribe conduct that exposes a potential victim to serious bodily injury due to the discharge of a firearm." (State's Brief, p. 13) The state also chastises the court of appeals for its footnoted comment that "[i]t appears the purpose of adding this offense to the statute was to increase the penalties for drive-by shootings." *Reed v. State*, 214 S.W.3d at 628, n. 1. However, we observe that the footnoted comment was not a basis for the court of appeals's conclusion. Rather, the court of appeals explicitly stated that it made its determination by considering the common usage of the "at or in the direction of a habitation" terminology in the context of the charging instrument. *Id.* at 628.

Thus the court of appeals did conduct the requisite plain-language and plain-meaning analysis that the state seeks. The court of appeals did not resort to extra-textual factors in interpreting the statute. It did, however, point out that, pursuant to Tex. Gov't Code § 311.011(a), "in addition to construing words and phrases of a statute according to the rules of grammar and common usage, reviewing courts must read the statute in context." *Reed, supra,* at 628.[1] The state simply disagrees with the court of appeals's construction of the meaning of the phrase "at or in the direction of" in the context of this case.

■ As both the state and appellant acknowledge, we construe a statute to give effect to its plain meaning, unless that statutory language is ambiguous or would lead to absurd results. *Boykin v. State,* 818 S.W.2d 782, 785–86 (Tex.Crim.App. 1991); *see also, Hicks v. State,* 241 S.W.3d 543, 545–46 (Tex.Crim.App.2007). The court of appeals construed the term "at or in the direction of a habitation" to assume that the actor is outside the habitation. *Reed, supra,* 214 S.W.3d at 628.

The plain language of § 22.05(b)(2) delineates behavior that constitutes a criminal offense: a person discharges a firearm at or in the direction of a habitation. The plain meaning of the phrase "at or in the direction of a habitation," contemplates that the firearm was discharged from some location other than the habitation itself. We cannot conclude that such language is ambiguous. Nor can we conclude that such a construction leads to an absurd result; there is no absurdity in requiring the discharging of a firearm "at or in the direction of a habitation" be done from outside of the habitation. The legislature did not include, within the definition of the

---

**1.** § 311.011(a) states, "Words and phrases shall be read in context and construed according to the rules of grammar and common usage."

charged offense, language that would criminalize the discharging of a firearm "inside" a habitation. The legislature's choice not to include such language, which could have easily been added to the statute, indicates the legislature's intent not to bring such conduct within the purview of this offense.

We conclude that the court of appeals did not err in holding that the evidence was legally insufficient. We therefore overrule the state's ground for review and affirm the judgment of the court of appeals.

COCHRAN, J., filed a concurring opinion in which WOMACK, J., joined.

KELLER, P.J., concurred.

KEASLER, HERVEY and HOLCOMB, JJ., dissented.

COCHRAN, J., filed a concurring opinion in which WOMACK, J., joined.

Didn't Richard III cry out, while he was at, on, or in Bosworth Field, "My kingdom for a proper preposition!" Well, perhaps it was a horse, but in this case the State's prosecution fails for want of a proper preposition. And it must, given both the vagaries of the English language and the sense of the penal statute.

The issue is: Can you shoot "at" a house from inside of it?

First, let us set the whole scene. The pertinent portion of the deadly conduct statute, Section 22.05(b) of the Penal Code, states:

A person commits an offense if he knowingly discharges a firearm at or in the direction of:

(1) one or more individuals; or

(2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied.

The two prepositions—"at" and "in the direction of"[1]—introduce several different prepositional nouns: "individuals," "habitation," "building," or "vehicle." Therefore, the word "at" must have the same spatial relationship to "individual" in subsection (1) as it does to "habitation" in subsection (2). The State argues that the word "at" in this statute is large enough, powerful enough, or vague enough to include the preposition "inside." Test that proposition: It does not make sense that the legislature would enact a statute saying, "A person commits an offense if he knowingly discharges a firearm *inside* one or more individuals."[2] This is an absurd interpretation, unless the victim is Jack the Giant.

Second, let us focus on ordinary usage. The word "at" is a tiny word that can carry a lot of freight and bear many different meanings, depending upon the context. When used in the deadly conduct statute, however, it refers to a positional place or spatial direction. The three common prepositions of place are "at," "on," and "in." "At" normally refers to a point, "on" refers to a surface, and "in" refers to an enclosed space.[3] Thus, "shooting at the house" nor-

---

1. In truth, "in the direction" is one prepositional phrase, and "of" is the preposition that starts the second prepositional phrase, describing which direction.

2. If the statute had criminalized the act of shooting at whales, then Chief Justice Gray's analogy to Jonah shooting the whale while he was inside that leviathan would be entirely

apt. *Reed v. State*, 214 S.W.3d 626, 630 (Tex. App.-Waco 2007) (Gray, C.J., dissenting on motion for rehearing) ("if Jonah had a weapon, he probably would have shot 'at' the 'big fish' that swallowed him too.").

3. *See, e.g., Prepositions of Location: At, In, On,* Purdue University Online Writing Lab. Available at: http://owl.english.purdue.edu/

mally means shooting at a point called a house from some other point outside the house; "shooting on the house" means shooting from the house while located somewhere on its surface (perhaps the roof); and "shooting in the house" means a shooting that occurs inside the area of the house.[4] And, of course, shooting "at an individual" in subsection (b)(1) means shooting at a point called an individual from some other point outside that individual. The common usage interpretation makes good sense in the context of the deadly conduct statute.

Third, if, in fact, the word "at" is ambiguous in this statute, one may appropriately look to the legislative history. Unfortunately, Section 22.05(b)(2) was added to the Penal Code as part of the large-scale Penal Code Revision of 1993, and I am unable to find a specific bill analysis for this particular statutory amendment. However, Texas prosecutors apparently assume that the purpose of this provision is to provide increased punishment for drive-by shootings. The annotated version of the TDCAA Penal Code states, "Drive-by shooting at houses, buildings, or cars is made a third degree felony by this stat-

ute."[5] Indeed it is. And rightfully so. The danger to human life posed by gang members driving through an enemy gang's territory and "shooting up the place" is extravagantly high. Even when a "drive-by" shooting does not result in any actual deaths, that conduct poses a high risk of physical danger and creates an atmosphere of civic panic, fear, and mayhem. It is such risky conduct that, even in the absence of any physical injury, the legislature has appropriately increased the punishment for it to a third-degree felony.

Finally, appellant could have been prosecuted for the offense of deadly conduct, just not under the enhanced-punishment provision. He could have been charged with deadly conduct under Section 22.05(a) which provides, "A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury." Under this provision, it does not matter whether appellant discharged his gun "at" the house, "on" the house, or "in" the house. This penal provision appropriately addresses the risk that appellant posed to his brother. Like the assault for which appellant was also con-

---

handouts/esl/eslprep2.html (Last visited on October 16, 2008). The Purdue Writing Lab explains the distinctions thus:

> Prepositions differ according to the number of dimensions they refer to. We can group them into three classes using concepts from geometry: point, surface, and area or volume.
>
> **Point**
>
> Prepositions in this group indicate that the noun that follows them is treated as a point in relation to which another object is positioned.
>
> **Surface**
>
> Prepositions in this group indicate that the position of an object is defined with respect to a surface on which it rests.
>
> **Area/Volume**
>
> Prepositions in this group indicate that an object lies within the boundaries of an area or within the confines of a volume.

In light of these descriptions, *at, on,* and *in* can be classified as follows:

at ... point
on ... surface
in ... area/volume

The Writing Lab then gives examples:

1. My car is at the house.
2. There is a new roof on the house.
3. The house is in Tippecanoe County.
4. There are five rooms in the house, which has a lovely fireplace in the living room.

4. "Shooting into the house" means someone outside the house is shooting into it from that outside point.

5. Diane Burch Beckham, Criminal Laws of Texas 2005–2007, 55 (TDCAA 2005).

victed, it is a Class A misdemeanor and carries a possible punishment of up to one year in jail, rather than a third-degree punishment of between two and ten years in prison for a conviction under Section 22.05(b)(2), the commonly called "drive-by shooting" provision.

With these comments, I join the majority opinion.